# THE STATE v. WALTER CASTLETON, Appellant.

## Division Two, February 17, 1914.

1. **INDICTMENT: Use of Word Not in Statute: Attorney: Embezzlement.** The use of the word "attorney" in an indictment charging defendant "as the agent, attorney, collector and servant" of prosecutrix with embezzling her money, although that word is not used in the statute, did not mislead him to his prejudice; and where the evidence would have been the same with the word omitted, it cannot be seen how its use could prejudice him.

2. **EMBEZZLEMENT: Evidence: Value of Stock.** The admission of evidence of the value of stock in an electric power company, which defendant says he traded to prosecutrix for the note he is charged with embezzling, and which she says he tried to sell to her and she refused to trade or buy, is not error.

3. ———: ———: **General Objection.** A general objection that proffered testimony is "incompetent, irrelevant and immaterial" is insufficient to call the trial court's attention to its inadmissibility.

4. ———: **Receiving Note as Bailee: Convicted as Collector and Agent.** Where the evidence both for the State and the defendant is that defendant never was employed to collect or sell prosecutrix's note, and demonstrates that he came into possession of it as a mere naked bailee, he could not convert it

so as to be guilty of embezzlement under Sec. 4550, R. S. 1909, nor can his conviction under that section stand, for it denounces an embezzlement by an agent, collector or servant. Section 4552 denounces an embezzlement by a bailee, and while it fixes the same punishment as does section 4550, the General Assembly has seen fit to make a distinction between embezzlement committed by a bailee and embezzlement committed by an agent, collector or servant, and the court must construe the law as it finds it.

5. ————: Charged with Embezzling Money: Proof of Embezzling Other Property. Prosecutions for embezzlement of money cannot be sustained by proof of the embezzlement of other property. Where defendant is charged with embezzling money which was the proceeds of a note—not with embezzling the note itself—he cannot be convicted on proof that he embezzled the note.

6. ————: ————: ————: Constitutional Mandate. The constitutional provision declaring that the accused shall have the right to "demand the nature and cause of the accusation" is not complied with by simply charging a defendant with acts similar to, or as heinous as, those upon which his conviction is sought. The constitutional mandate is not technicality; it is a matter of substance which cannot be disregarded or brushed aside.

7. PLEDGE: Right of Pledgee to Sell: Unindorsed Note. In the absence of a special authority or agreement permitting him to do so, a pledgee has no right to sell commercial paper held as a pledge. A written authorization that a certain note "be held as collateral security for this note" does not authorize the pledgee to sell the unindorsed collateral note, and hence he could not convey such power to the defendant to whom he delivered the note.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

REVERSED AND REMANDED.

*E. E. Hairgrove* for appellant.

*John T. Barker*, Attorney-General, and *Ernest A. Green*, Assistant Attorney-General, for the State.

(1) The fact that the word "attorney" was interpolated into the information between the words

"agent" and "collector" does not render the information defective. The term "agent," as used in Sec. 4550, R. S. 1909, includes the relation of attorney. State v. Gibhardt, 219 Mo. 708; State v. Thomson, 155 Mo. 300; State v. Cunningham, 154 Mo. 161; State v. Brown, 171 Mo. 477. (2) With reference to the proposition that the allegation in the information is the embezzlement of money and the evidence showed the embezzlement of a note, the State insists that this is a mistaken theory of this case. The power of attorney gave defendant the absolute authority to receive this note from Allen, and his subrogated interest in the note gave him the right to sell it and to pay himself out of the proceeds thereof the sum of $265.71, advanced by him to Allen on account of Miss Cole. The defendant, being Miss Cole's agent in thus selling the note, was vested with authority to receive the proceeds of the note, but in appropriating the money realized therefrom to his own use, he was guilty of embezzlement. State v. Bacon, 170 Mo. 162; State v. Mispagel, 207 Mo. 575. The money realized by defendant from the sale of this note belonged to the prosecuting witness, Ellen Cole, and she was entitled to the possession of it after the $265.71 due from her to defendant was deducted. When the defendant appropriated it to his own use without Miss Cole's consent he was guilty of embezzlement.

BROWN, J.—Charged with and convicted of embezzling $2948.75 as the agent, *attorney,* collector and servant of one Ellen Cole, defendant appeals from a judgment fixing his punishment at four years in the penitentiary. At the date of the alleged crime defendant was an attorney of Kansas City, Missouri, and Miss Ellen Cole, the prosecutrix, a spinster of the same city. She will hereafter be designated as the prosecutrix.

On December 27, 1910, prosecutrix employed defendant to collect a note of $140 executed by one Ridgeway, and paid defendant $10 for his contemplated service in that behalf. The Ridgeway note, together with two other notes, one for $100 and the other for $3350, were, at that time, in the hands of one George R. Allen, her former attorney, who was then in Topeka, Kansas.

These notes had not been indorsed to Allen, but he claimed that prosecutrix owed him $265.71, and demanded that his claim be paid before surrendering possession of the notes. The defendant paid to Allen the amount of his claim against prosecutrix. She seems to have understood this payment or advancement as a loan to her.

On January 30, 1911, she gave the defendant the following power of attorney, or order to Allen, her former attorney:

> Know All Men by These Presents, That I, Ella Cole, of the city of Kansas City, State of Kansas, have made, constituted and appointed, and by these presents do make, constitute and appoint W. E. Casleton, true and lawful attorney for me in my name, place and stead to receive from George R. Allen of Kansas City, Kan., all papers, negotiable instruments, or other documents which the said Allen now holds and which are my property; and further to execute to said Allen receipt for same, which said receipt shall be full evidence as though I had received them myself, and further.
> Dated this 30th day of January, 1911.
>
> ELLEN COLE.

The note for $3350 was secured by deed of trust on real estate situated in the State of Kansas, and forms the basis of this litigation. The two smaller notes may be dropped from further consideration. It will be observed that the $3350 note is not specifically named in the above quoted order or power of attorney which prosecutrix signed authorizing defendant to receive "all papers, negotiable instruments or other documents" held by Allen. Prosecutrix contends that

State v. Castleton.

at the time she signed the order to Allen, her former attorney, she did not know that the $3350 note was in his possession, and that she did not intend to deliver that note to defendant. When asked if she at any time turned the $3350 note over to defendant, or authorized him to get it, she replied: "No, sir, I can raise my hand up to God and tell you I never did, and that is saying a good deal." Defendant testified that at the time the order to Allen was signed by prosecutrix (on January 30, 1911), he made a trade with her whereby he became the owner of the $3350 note— that he traded her 15,000 shares of stock in an electric power company, and gave her his individual note for $300 in consideration of her $3350 note, and that also, as a part of the consideration of that trade, he agreed to pay her five per cent interest on $3350 until her stock in the power company should become worth $5000.

On February 6, 1911, defendant forwarded to Allen the order or power of attorney, hereinbefore set out, together with a check for $265.71, accompanied by the following letter:

Feb. 6, 1911.

Hon. George R. Allen,
          House of Reps., Topeka, Kan.
     Dear Sir:   Enclosed find certified check for $265.71 to cover amount due you in the Cole matter.
     I wish you would please arrange for me to get the abstract to the property; if the Commercial National Bank has it, please execute an order that I may get it.
     Enclosed you will also find power of attorney executed by Miss Cole to me which will be your authority for delivering these notes to me; she has also executed to me, an assignment in words as follows:
     To W. E. Casleton:   I hereby assign all my right, title and interest in and to certain promissory notes which are now held by Geo. R. Allen of Kansas City, Kan., for $3,350.00, signed by Justice Anderson and payable to Ellen Cole. Dated this 30th day of January, 1911.  Signed, Ellen Cole.
     Trusting all matters are satisfactory and to receive notes, etc., by return mail, I remain
                    Very truly yours,
                         W. E. CASLETON.

In response to the foregoing letter, and the order therein inclosed, Mr. Allen forwarded to defendant all the papers of prosecutrix held by him, including the note for $3350.

Defendant testified that a few days after this note was received he presented it to prosecutrix and she indorsed and transferred it to him by signing her name on the back thereof, and that the land by which the note was secured being situated in Kansas, where an assignment of the deed of trust was necessary to make the transfer of the note effectual, prosecutrix duly signed and acknowledged a transfer of the deed of trust.

Prosecutrix testifies that she did not purchase any stock of defendant; that she did not sell or trade the $3350 note to him; and that she did not indorse her name on the note, or sign or acknowledge the transfer of the deed of trust given to secure the note.

There was evidence tending to corroborate both the prosecutrix and defendant at all points where their evidence conflicts. The conclusions we have reached render it unnecessary to set out all of such evidence in this opinion.

The following facts are undisputed:

That the note for $3350 was not indorsed by the prosecutrix when defendant received it into his possession; that on February 27, 1911, defendant borrowed $500 from a bank in Kansas City, giving the $3350 note originally owned by prosecutrix as security for said loan; that a few months later he borrowed $1500 from another bank in the same city, again using the same collateral as security; and that in May, 1912, the defendant sold the $3350 note outright for $2950, and that he appropriated the proceeds of the sale to his own use. Defendant, further testifying in his own behalf, stated that in hypothecating the $3350 note and in selling it he was not representing the prosecutrix as agent,

attorney, collector or servant, but was acting solely for himself as the owner of said note.

Such further facts as are necessary to an understanding of the issues to be determined by us will be noted in our opinion.

Among the grounds urged for reversal are: (1) insertion of the word *attorney* in the information, when said word does not appear in section 4550, Revised Statutes 1909, upon which this prosecution is based; (2) the admission of improper evidence; and (3) that the verdict is contrary to the evidence.

## OPINION.

I.  As we have concluded that the judgment must be reversed for reasons expressed in another paragraph of this opinion, we will consider only such assignments of error as may point the way to a correct retrial of the cause.

The insistence that defendant was prejudiced by charging him with the crime of embezzlement as an **Attorneys.** "attorney" we are constrained to treat as frivolous.  The word *attorney* is not found in that section of the statute under which defendant was prosecuted, but its insertion did not mislead defendant to his prejudice.  [Section 5115, R. S. 1909.] The evidence could have been, and probably would have been, the same with the word attorney omitted as it was with that word unnecessarily added.  The contention, *ore tenus,* that the public press of Kansas City has abused and maligned attorneys as a class until juries of that locality believe that attorneys generally are dishonest, is a matter of which we cannot take judicial notice—not yet, at least.  There was one prominent attorney of Jackson county who recently tried to *resign* the position of attorney to this court, but we are not aware that he did so because attorneys in his county are *personae non gratae* among honest men.

II. The admission of evidence tending to prove that the stock of the power company was worthless in January, 1911, and that defendant received a large amount of such stock for nominal serv-

**Stock: Evidence of Value.**

ices, was not error as it tended to corroborate prosecutrix in her statements that defendant tried to sell her some of the stock and that she refused to buy or trade for it. It is more probable that she would decline to purchase or trade for worthless stock than if it had possessed substantial value.

III. However, for the purposes of this appeal, the admission of said evidence would not constitute error, because when evidence of the worthlessness of the stock

**Evidence: General Objections to.**

was offered defendant's counsel merely objected to same on the ground that said evidence was "incompetent, irrelevant and immaterial." We have ruled times almost without number that such a general objection to evidence is insufficient to call the trial court's attention to its inadmissibility. [State v. Pyles, 206 Mo. 626, l. c. 632; State v. Crone, 209 Mo. 316, l. c. 330; State v. Colvin, 226 Mo. 446, l. c. 490; State v. Ferrell, 246 Mo. 322, l. c. 331; and State v. Wellman, 253 Mo. 302.]

IV. The insistence of defendant that the verdict is contrary to the evidence is equivalent to urging that there is no substantial evidence to support the ver-

**Insufficiency of Evidence.**

dict. We shall so treat it. The testimony of prosecutrix is that she never authorized defendant to receive the $3350 note. So far as her evidence goes defendant was not empowered by her in any capacity to sell or otherwise dispose of the $3350 note. His employment was to collect the smaller notes, and the receipt which he gave prosecutrix for the $10 fee paid him so indicates. Defendant's testimony is to the effect that the only

transaction he had with prosecutrix regarding the $3350 note was as a purchaser or assignee thereof. The letter which defendant wrote to Allen, found in our statement of the facts, contains a copy of an alleged assignment of the $3350 note, which assignment purports to have been made January 30, 1911, which was before the note came into defendant's possession.

So that, according to the evidence of both parties, defendant never was employed by prosecutrix to either collect or sell the note. It is somewhat strange that the learned prosecuting attorney should charge the defendant with receiving money as the agent of the prosecutrix, when she swears so vehemently that she did not grant him authority to even receive the note into his possession. However, we can only deal with the case as it comes to us, not as it might have been if defendant had been charged with a different offense.

If we set aside and disregard the evidence of both prosecutrix and defendant, it appears that the $3350 note came into defendant's possession by the mere inadvertence of prosecutrix in giving a general order to Allen, her former attorney, to turn over to defendant all her papers, when she did not at that time understand that Allen was in possession of her $3350 note.

The order to Allen only authorized defendant to receive and receipt for the note, nothing being said about selling or collecting it, or granting a pledge upon it; so the most that can be said of defendant's possession *under that order* is that it constituted him a mere bailee, and as such bailee he could not sell or convey title to same. [Hendricks v. Evans, 46 Mo. App. 313; Sowden v. Kessler, 76 Mo. App. 581.]

Being a mere naked bailee of the note he could not convert it so as to be guilty of embezzlement as denounced by section 4550, Revised Statutes 1909, under the rule announced by this court in the case of State v. Meyers, 68 Mo. 266. That case is a construc-

255 Mo. 14

tion of said section 4550, as found in Wagner's Statutes of 1872, section 35, p. 458, where it appears in the same form as in Revised Statutes 1909. If the prosecution had been under section 4552, Revised Statutes 1909, prohibiting embezzlement by bailee, there would be some ground for contending that the evidence of Mr. Allen would furnish support for a charge of embezzlement of the note by a bailee. [State v. Betz, 207 Mo. 589.] It seems a little strange that there should be a difference between an embezzlement committed by bailee, and the same offense when committed by an agent, servant or collector, particularly since the punishment for both offenses is the same. However, the General Assembly has so written the criminal law, and it is our job to construe it as we find it—not as we think it ought to be. The record is barren of anything showing that defendant received the proceeds of the $3350 note *as the agent, collector or servant* of the prosecutrix, hence the conviction is without support in the evidence.

V. There is, however, another difficulty in the way of upholding the conviction in this case. The defendant is only charged with embezzling money which was the proceeds of a note—not with embezzling the note itself. It has long been the rule of this court that prosecutions for embezzlement of money cannot be sustained by proof of the embezzlement of other property. [State v. Schilb, 159 Mo. 130, l. c. 142; State v. Mispagel, 207 Mo. 557, l. c. 574.] In the latter case it was expressly held that a charge of embezzling money was not sustained by proof of the embezzlement "of a check, draft, bond or other property." This rule seems rather technical, but section 22, article 2, of our Constitution ordains that in criminal prosecutions the accused shall have the right "to demand the nature and cause of the accusation." This constitutional provision has uniformly been held to require such accuracy in crim-

*Embezzlement.*

inal pleadings that the accused will not be misled in making his defense. [State v. Pickett, 174 Mo. 663; State v. Murphy, 141 Mo. 267; State v. McChesney, 90 Mo. 120.]

The Constitution is not complied with by simply charging a defendant with acts similar to or as heinous as those upon which his conviction is sought. The State, at its peril, must find out what particular criminal law the defendant has violated and prosecute him accordingly. I believe that technicalities should be disregarded, but a constitutional mandate prescribing that a defendant shall be notified by the indictment of the acts for which the State seeks to take away his liberty is not a technicality. It is a matter of substance which cannot be brushed aside or disregarded.

VI. The learned Attorney-General insists that defendant possessed the right to sell the $3350 note of prosecutrix for the reason that by paying Allen, her former attorney, $265.71, he became subrogated to the lien which Allen held as a pledgee of the note, and that all moneys received by defendant for said note in excess of the pledge were the property of prosecutrix, citing State v. Bacon, 170 Mo. l. c. 162; and State v. Mispagel, 207 Mo. l. c. 575. In the two cases last cited there was no question about the agency of Bacon and Mispagel, and that they possessed the right to receive the funds they were charged with embezzling. We are not able to see how the facts here, or the law in the cases cited, sustain the proposition. The only evidence of a pledge of the $3350 note to Allen is contained in the following note introduced by defendant:

**Pledge: Assignment of.**

> Kansas City, Kan. 3-22-1910.
>
> $100.00
>
> Ninety days after date I promise to pay to the order of Geo. R. Allen, one hundred dollars interest at eight per cent per annum from date. I authorize note and mtg. of J. C. Anderson to be held as collateral security for this note. Value received.                   ELLEN COLE.

If the above note for $100 created a pledge on the unindorsed $3350 note of prosecutrix, there is no evidence that Allen sold or transferred such pledge to defendant. Both defendant and prosecutrix treated the payment from defendant to Allen as a loan to prosecutrix, which paid off Allen's claims. The prosecutrix says it was a loan, and it will be noted that defendant's letter to Allen of February 6, 1911, does not ask for a transfer or assignment of any note or other indebtedness. It says that the remittance is "to cover amount due you in the Cole matter," thus pointing to a payment, not to the purchase of a pledge.

But if it be conceded that the payment of the $265.71 by defendant to Allen operated to transfer to defendant the lien of a pledge held by Allen upon the $3350 note, there is still no evidence to show that Allen even possessed the power to sell the note, which had not been indorsed by the prosecutrix. Possessing no power to sell, Allen could not convey any such power to defendant, even if he had attempted to do so, which he did not.

Regarding the right to sell pledged property, the rule is announced in 31 Cyc. 839, as follows:

"In the absence of special authority or agreement permitting him to do so, a pledgee has no right to sell commercial paper held as pledge, either at public or private sale, and an unauthorized sale by him constitutes a conversion of the instrument. The power to sell, may, however, be given the pledgee by express agreement, although even in such case notice of the time and place of sale must be given the pledgor."

The same rule has been announced by this court in the case of Richardson v. Ashby, 132 Mo. 238.

There being no substantial evidence to support the verdict, the trial court should have sustained defendant's motion for new trial, and for its failure so to do we reverse the judgment. But as the State may be able to produce other or different evidence upon a

second trial, or may wish to place defendant on trial for a different offense, we will remand the cause for further proceedings not inconsistent with the views herein expressed. It is so ordered.

*Walker, P. J.*, and *Faris, J.*, concur.